IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:24-cv-00507-RAH |
| | ) | [WO] |
| STANLEY WILSON AND | ) | |
| DYLAN ELLER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This is an excessive force case involving a law enforcement canine. The Defendants move to dismiss the Complaint on qualified immunity grounds. The motion will be granted in part.[1]

## LEGAL STANDARD

Rule 12(b) allows for dismissal of a complaint for, among other matters, "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When confronted with a motion to dismiss presented under Rule 12(b)(6), a court must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *ADA v. Cigna Corp.*, 605 F.3d 1283, 1288–89 (11th Cir. 2010). Nonetheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[1] On December 3, 2024, the undersigned referred this case to the Magistrate Judge for further proceedings or recommendation as may be appropriate. (Doc. 20.) It is appropriate for the District Judge to handle the Defendants' Motion to Dismiss in this case; thus, the Motion (Doc. 11) is no longer referred to the Magistrate Judge.

544, 555 (2007); *see also ADA*, 605 F.3d at 1289. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. Stated differently, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 547.

Plausibility is hence the touchstone of review. A claim can be so classified "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "[t]he plausibility standard is not akin to a 'probability requirement,'" the Supreme Court has further advised that "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Moore v. Grady Mem'l Hosp. Corp.*, 834 F.3d 1168, 1171 (11th Cir. 2016) (quoting *Ashcroft*, 556 U.S. at 678). Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft*, 556 U.S. at 678 (internal quotation marks omitted).

## BACKGROUND

On June 21, 2024, Christopher Nelson was asleep inside a structure on his family's property when he was awakened by law enforcement from the Lee County Sheriff's Office who were calling his name from outside. (Doc. 1 at 3.) Nelson walked to the doorway and saw the law enforcement officers. (*Id.*) He was unarmed and wearing only shorts. (*Id.* at 3-4.) One of the officers commanded Nelson to turn around, place his hands behind his back, and lie down on the floor. (*Id.* at 4.) He complied with the commands. (*Id.*)

Then, while on the floor, he heard Deputy Stanley Wilson of the Lee County Sheriff's Office speak a word that he did not recognize, after which a canine began to attack Nelson. (*Id.*) The canine repeatedly bit Nelson and caused injuries to his right hip, right leg, and right foot. (*Id.*) The canine eventually was released. (*Id.*)

Paramedics arrived and advised that Nelson should be taken to the hospital for his injuries. (*Id.* at 4–5.) But the law enforcement officers refused. (*Id.* at 5.)

## DISCUSSION

Nelson brings two claims under 42 U.S.C. § 1983. In Count I, Nelson alleges Deputy Wilson used excessive force in violation of the Fourth and Fourteenth Amendments when he released his canine and gave a command to attack. In Count II, Nelson alleges Deputy Eller acted objectively unreasonable and with deliberate indifference when he failed to intervene during the canine attack. Wilson and Eller primarily argue their entitlement to qualified immunity, along with other arguments that challenge the nature of Nelson's factual allegations and the lack of any basis in the Fourteenth Amendment.

### A.     "Information and Belief" Allegations

Wilson and Eller first argue their entitlement to qualified immunity because Nelson prefaces his factual allegations by stating that they are "based on information and belief," and as such, Nelson's allegations should not be assumed true for purposes of Wilson and Eller's Motion to Dismiss. In other words, they attempt to do away with Nelson's entire Complaint by framing the phrase "information and belief" as magic words that require the Court to disregard the typical treatment of complaint allegations at the motion to dismiss stage.

The Court finds this argument unpersuasive. Where the complaint "contain[s] sufficient factual matter" that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, the complaint is not merely based on "information and belief," but satisfies the pleading standard under *Twombly*. *See, e.g.*, *Norton v. Walton*, No. 24-CV-515, 2025 WL 540019, at *3 n.1 (M.D. Ala. Feb. 18, 2025).

While Wilson and Eller correctly note that claims based on information and belief generally are not entitled to any presumption of truth without support from

3

other factual details in a complaint, Nelson does allege factual details in the Complaint that are largely based on Nelson's personal, first-hand encounter with Wilson and Eller. The *Twombly* plausibility standard does not prevent a plaintiff from pleading facts alleged upon information and belief where the belief is based on factual information that makes the inference of culpability plausible. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Nelson sufficiently cites to specific facts concerning the actions of Wilson and Eller that make culpability plausible. As such, Wilson and Eller's challenge based on claimed pleading deficiencies will be rejected.

### B. Fourteenth Amendment Claims

In Counts I and II, Nelson alleges that Wilson's release of the canine and Eller's failure to intervene constitute violations of the Fourteenth Amendment. Wilson and Eller argue the Fourteenth Amendment is inapplicable to these claims as the alleged constitutional violations occurred during the course of an arrest.

Nelson's reply does not address this argument. Instead, Nelson only responds to Wilson and Eller's Fourth Amendment arguments. Failure to respond to an argument results in waiver and abandonment of the claim. *See, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (stating that "since [the plaintiff] did not raise this issue until her supplemental reply brief, we deem it abandoned").

Additionally, "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis omitted). It is undisputed that the claims of excessive force alleged in

Counts I and II occurred during an arrest. Thus, to the extent Nelson brings his excessive force claim under the Fourteenth Amendment, Wilson and Eller's motion to dismiss Counts I and II is due to be granted.

### C. Qualified Immunity & The Fourth Amendment Claims

Wilson and Eller assert their entitlement to qualified immunity against Nelson's Fourth Amendment violation claims. "Questions of qualified immunity should be resolved at the earliest possible stage in the litigation. A district court should therefore grant the defense of qualified immunity on a motion to dismiss if the complaint fails to allege the violation of a clearly established constitutional right." *Dalrymple v. Reno*, 334 F.3d 991, 994–95 (11th Cir. 2003) (internal quotation marks and citations omitted), *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)).

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Baker v. City of Madison*, 67 F.4th 1268, 1278 (11th Cir. 2023) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))). To analyze a defendant's defense of qualified immunity, a court must "first consider whether the defendant government official has proved that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred." *Id*. at 1278 (quoting *Gonzalez v. Lee Cnty. Hous. Auth.*, 161 F.3d 1290, 1294–95 (11th Cir. 1998), *abrogated on other grounds by Randall v. Scott*, 610 F.3d 701, 707–10 (11th Cir. 2010)). "The inquiry is two-fold: '[the court] ask[s] whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize.'" *Carruth v. Bentley*, 942 F.3d 1047, 1054 (11th Cir. 2019) (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)). After

the defendant makes this showing, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Baker*, 67 F.4th at 1278 (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002), *overruled in part on other grounds by Pearson*, 555 U.S. at 223).

"To overcome a qualified immunity defense, the plaintiff must make two showings." *Id.* at 1278 (quoting *Christmas v. Harris Cnty.*, 51 F.4th 1348, 1354 (11th Cir. 2022)). The plaintiff must show "that the defendant violated a constitutional right" and "that the violation was clearly established." *Id.* (quoting *Christmas*, 51 F.4th at 1354). The court must inquire as follows: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Gonzalez*, 325 F.3d at 1234 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established." *Id.* (alteration in original) (quoting *Saucier*, 533 U.S. at 201). Essentially, the plaintiff is tasked with showing "that qualified immunity is not appropriate." *Id.* (citation omitted). Upon establishing these two elements, the official loses the qualified immunity defense. *Baker*, 67 F.4th at 1278.

Wilson and Eller argue they were performing the functions of their job during a lawful arrest when the canine was deployed and therefore they have satisfied their initial burden. Nelson's Complaint allegations bear that out. Determining "that an officer was acting within his discretionary authority is quite a low hurdle to clear." *Godby v. Montgomery Cnty. Bd. of Educ.*, 996 F. Supp. 1390, 1401 (M.D. Ala. 1998). And here, Wilson and Eller have made their requisite showing. *Carruth*, 942 F.3d at 1054. The Court therefore proceeds to determine whether Nelson has met his burden in showing that Wilson and Eller violated a constitutional right and that the violation was clearly established.

6

### 1. Deputy Wilson

Nelson alleges Deputy Wilson's release of a canine with the knowledge or intent that the canine would attack Nelson was a use of force that was excessive, unwarranted, and unlawful in violation of the Fourth Amendment. Nelson alleges that Wilson knew the canine would attack Nelson even though he was not in flight, not armed, virtually unclothed, not threatening to law enforcement, compliant with law enforcement's commands, on the floor with his hands behind his back, and had not committed any violent or serious offense. Therefore, according to Nelson, Wilson had no reason to release and command his canine to attack.

"In an excessive force case arising out of an arrest, whether a constitutional violation occurred is governed by the Fourth Amendment's 'objective reasonableness' standard." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004)). "The test of reasonableness under the Fourth Amendment" is not a mechanically applied test and instead requires an assessment of "the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (cleaned up). Some of the facts and circumstances assessed include (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. "A genuine excessive force claim relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest." *Hadley*, 526 F.3d 1329 (internal quotation marks and citation omitted).

Accepting Nelson's allegations as true, an application of force, such as a canine unit, was not objectively reasonable under these facts. *Crenshaw v. Lister*, 556 F.3d 1283, 1293 (11th Cir. 2009) ("[I]t would have been objectively unreasonable for [the defendant officer] to allow the canine to continue attacking [the plaintiff arrestee] *after* he was secured."); *see also Hadley*, 526 F.3d at 1330

7

("Our cases hold that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force."); *Davis v. Williams*, 451 F.3d 759, 767 (11th Cir. 2006) (stating that "the unlawfulness of the [defendant police officer's] conduct is readily apparent without clarifying caselaw" where he "subject[ed] [the plaintiff,] a previously threatening and fleeing arrestee[,] to nondeadly force after the arrestee suddenly became docile"); *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000) (stating that the "evidence suggests the officers used excessive force in beating [the plaintiff] even though he was handcuffed and did not resist, attempt to flee, or struggle with the officers in any way"). Under established Eleventh Circuit precedent, Nelson has pleaded facts that plausibly allege a constitutional violation occurred.

The Court must next consider "whether the law clearly established the relevant conduct as a constitutional violation at the time that Defendant Officers engaged in the challenged acts." *Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017) (citing *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011)). Courts "look for 'fair warning' to officers that the conduct at issue violated a constitutional right." *Id*. at 851 (quoting *Coffin*, 642 F.3d at 1013). Fair warning can be established in three ways: (1) "a plaintiff may point to binding precedent that is materially similar"; (2) "a plaintiff may invoke a 'broader, clearly established principle' that he asserts 'should control the novel facts of the situation'"; (3) "when the defendant's conduct 'lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law.'" *Id*. at 852 (cleaned up) (quoting *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204–05 (11th Cir. 2012)).

The Court turns to several decisions from the Eleventh Circuit in dog bite cases for guidance concerning Wilson's use of a canine on June 21, 2024. *See Priester v. City of Riviera Beach*, 208 F.3d 919 (11th Cir. 2000); *Crenshaw v. Lister*,

8

556 F.3d 1283 (11th Cir. 2009); *Edwards v. Shanley*, 666 F.3d 1289 (11th Cir. 2012), and *Jones*, 857 F.3d 843.

In *Priester*, Priester was a suspect of a minor offense, and, at the time of his arrest, law enforcement had no reason to suspect Priester was armed or that he otherwise posed an immediate threat to the officers or anyone else. 208 F.3d at 927. Further, while Priester originally fled the officers, he eventually submitted to them. *Id.* at 923, 927. It was at the point that Priester was subdued that the officer who controlled the police canine nonetheless ordered his canine to attack and bite Priester for at least two minutes and threatened to kill Priester when Priester tried to resist the attack. *Id.* at 927. Priester suffered fourteen puncture wounds to his legs. *Id.* at 924. The Eleventh Circuit concluded that the officer and his officer colleague who failed to intervene violated Priester's Fourth Amendment right to be free from the use of excessive force. *Id.* at 927–28.

In *Crenshaw*, the Eleventh Circuit concluded the officer's actions in releasing a canine were reasonable and therefore constitutional. 556 F.3d at 1294. The Eleventh Circuit relied, in part, on the fact that the plaintiff was suspected of a serious crime—armed robbery—believed to be armed, and had fled from police in a vehicular chase and on foot. *Id.* And in *Edwards*, the Eleventh Circuit held that initially deploying a canine against a fleeing suspect was constitutional but that allowing the canine to continue to bite the suspect for several minutes after the suspect had surrendered, was not resisting, and was compliant with commands (that is, was no longer a danger or threat) constituted excessive force. 666 F. 3d at 1295. In *Jones*, the Eleventh Circuit held that no clearly established constitutional violation occurred when the officer, fearing an ambush, released his canine upon the plaintiff, who was suspected of burglary, fled from police into challenging terrain, did not respond to canine warnings, and did not voluntarily surrender. 857 F.3d at 853–55.

Although not a dog bite case, in *Mercado v. City of Orlando*, law enforcement

was dispatched to the plaintiff's residence on a report that the plaintiff was attempting suicide. 407 F.3d 1152, 1154 (11th Cir. 2005). For twenty minutes, officers tried to communicate with the plaintiff from outside his residence. *Id.* When officers entered the residence, the plaintiff was crying, seated on the floor, pointing a knife towards his heart, and had a telephone cord wrapped around his neck. *Id.* Officers twice told the plaintiff to drop the knife but did not warn him that they would use force if he did not comply. *Id.* While the plaintiff did not make any threatening movements, he also did not drop the knife. *Id.* In violation of department policy, the defendant officer fired a "less lethal" weapon at the plaintiff's head, causing permanent brain injuries. *Id*. at 1154–55. The Eleventh Circuit denied qualified immunity, finding the case "so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the [officer], notwithstanding the lack of case law." *Id*. at 1160 (citation omitted). The Circuit reasoned that the plaintiff did not actively resist arrest, make threatening movements, or pose an immediate threat to the officers. *Id*. at 1157–58. Arguably, the plaintiff had insufficient time to comply with orders to drop the knife. *Id*. at 1157.

Here, according to the Complaint, Nelson was (1) awakened by law enforcement; (2) not fleeing; (3) virtually unclothed; (4) not actively engaged in criminal conduct; (5) not resisting; (6) unarmed; (7) on the floor on his stomach with his hands behind his back; and (8) compliant with law enforcement's commands. (Doc. 1 at 3–4.) Yet according to Nelson, Wilson did not provide a warning and simply released his canine and gave a command to attack. (*Id.* at 4.) This case resembles and is sufficiently similar to *Priester* where the Eleventh Circuit concluded that a Fourth Amendment violation had occurred because force was used without warning against an arrestee who did not actively resist, flee, make threatening movements, or act inconsistently with law enforcement demands. *Id.*

10

This contrasts with the facts in *Crenshaw* and *Jones* where the arrestees fled and did not voluntarily surrender, and in the case of *Crenshaw*, was believed to be armed. And somewhat similar to those facts in *Edwards*, where a canine was allowed to continue to attack even after the arrestee was no longer a threat or danger to law enforcement. Thus, prior case law would have given Wilson fair warning that the conduct at issue, if assumed true, violated the Fourth Amendment.

Further, a reasonable officer would not need prior case law to know that releasing a canine onto an unarmed, nonthreatening, non-fleeing, partially clothed, compliant arrestee constitutes excessive force, just like it would if an officer struck, beat, or shot a compliant, nonthreatening arrestee. *Mercado*, 407 F.3d at 1154; *Priester*, 208 F.3d at 927. Stated differently, the chain of events Nelson describes is sufficiently analogous to *Mercado* to create the inference that these events by their nature are "at the very core" of what is prohibited by the Fourth Amendment. *Mercado*, 407 F.3d at 1160 (citation omitted).

Accordingly, Wilson is not entitled to qualified immunity at the motion to dismiss stage when considered against Nelson's Complaint allegations when assumed true. It may very well be that these factual allegations do not survive the test of discovery or the footage from law enforcement body cameras.[2] But that is an issue for another day.[3]

### 2. Deputy Eller

As to Eller, Nelson alleges that Eller failed to intervene in Wilson's use of force when he was present, observed the attack, knew or should have known that the

---

[2] The body cam footage has not been provided.

[3] The Court recognizes that many dog bite case decisions often consider the length or duration during which the canine was allowed to attack the arrestee. While Nelson's Complaint makes no allegations concerning the duration of the canine attack, the allegations in this case are not so much about the duration of the attack as they are about the very basis for the attack in the first place.

force being used on Nelson was excessive and unreasonable, and could intervene. Eller argues the factual underpinning for his alleged failure to intervene to stop a canine attack is blatantly missing and that the allegations are merely conclusory.

"If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation . . . takes place in his presence, the officer is directly liable under Section 1983." *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th 1986). "This liability, however, only arises when the officer is in a position to intervene and fails to do so." *Priester*, 208 F.3d at 924 (citation omitted). "The principle that an officer must intervene when he or she witnesses unconstitutional force has been clearly established in this Circuit for decades." *Helm v. Rainbow City*, 989 F.3d 1265, 1272 (11th Cir. 2021) (citing *Priester*, 208 F.3d at 927). The Eleventh Circuit has held that officers have the ability to intervene when a canine attack occurred over an extended period of time and was preceded by a spoken warning and threat. *Priester*, 208 F.3d at 923–24, 927.

Here, Nelson has not alleged sufficient facts to plausibly demonstrate that Eller could intervene. Nelson has alleged that during the time he was on the ground, a single (unrecognizable) word was spoken by Wilson after which the canine began to attack. Nelson does not allege that this event was preceded by any type of warning. Further, while Nelson alleges he was repeatedly bitten, Nelson provides no facts concerning where Eller was located exactly, what Eller saw exactly, or how long the attack lasted. In short, Nelson has not plausibly shown Eller had the ability to prevent or intervene in the alleged attack. The Court cannot infer, based on Eller's presence alone, that Eller had the ability or opportunity to intervene. On these facts, Nelson has shown no clearly established right, and thus, taking all the facts and inferences in Nelson's favor, Eller's mere presence without more is not enough to overcome the defense of qualified immunity on Nelson's failure to intervene claim against Eller.

## CONCLUSION

For the reasons discussed above, it is hereby **ORDERED** as follows:

1. The Defendants' Motion to Dismiss (doc. 11) as to Count I against Defendant Stanley Wilson is **DENIED** as to the Fourth Amendment excessive force claim and **GRANTED** as to the Fourteenth Amendment claim.

2. The Defendants' Motion to Dismiss (doc. 11) as to Count II against Defendant Dylan Eller is **GRANTED** in total.

3. Defendant Dylan Eller is dismissed as a party to this case.

4. This case shall proceed on the Fourth Amendment excessive force claim against Defendant Stanley Wilson.

5. This case shall continue to be referred to the Magistrate Judge for further proceedings and determination or recommendation as may be appropriate.

DONE, on this the 11th day of July 2025.

_____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE